## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| ELIZABETH AMICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:12-0922 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Document No. 12.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Elizabeth Amick (hereinafter referred to as "Claimant"), filed an application for SSI on February 20, 2008 (protective filing date), alleging disability as of May 8, 2002, due to "herniated discs [and] bone spurs on [her] nerve." (Tr. at 10, 127-32, 148, 154.) The claim was denied initially and upon reconsideration. (Tr. at 69-71, 81-83.) On March 26, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 84-86.) The hearing was held on October 16, 2009, before the Honorable Geoffrey Carter. (Tr. at 18-66.) By decision dated November 2, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-17.) The ALJ's decision became the final decision of the Commissioner on January 27, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) On March 30, 2012, Claimant

brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the

2

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since February 20, 2008, the application date. (Tr. at 12, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "lumbar spine degenerative disc disease," which was a severe impairment. (Tr. at 12, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform light exertional work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work with a sit/stand option, occasional postural activities, and no overhead lifting or concentrated exposure to cold, heat, vibration or hazards.

(Tr. at 13, Finding No. 4.) At step four, the ALJ found that Claimant was unable to return to her past relevant work. (Tr. at 15, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as a food counter attendant, meat processor, and an inspector, at the light level of exertion. (Tr. at 16, Finding No. 9.) On this basis, benefits were denied. (Tr. at 16, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

3

a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 1, 1966, and was 43 years old at the time of the administrative hearing, October 16, 2009. (Tr. at 15, 23, 126.) Claimant had a high school education and was able to communicate in English. (Tr. at 15, 23, 147, 152.). In the past, Claimant worked as a cook. (Tr. at 15, 25-27, 55, 148-50, 158-65.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred by failing to discuss Claimant's change of age. (Document No. 12 at 3.) Claimant asserts that she was 41 years old when she filed her application, but that the ALJ failed to consider that "by November 2, 2009, the plaintiff was in fact in a different age category." (Id.) Claimant does not contend that the ALJ "must have found her disabled," but that he should

4

have at least discussed the change in age category as he "may have" found her disabled" under the grids. (Id.)

In response, the Commissioner asserts that Claimant's age category did not change during the pendency of the case. (Document No. 13 at 11-12.) The Commissioner asserts that Claimant was born on May 1,1966, and therefore, was 41 years old at the time of her application, and 43 years old at the time of the hearing, each age defined as a younger individual by the Regulations. (Id. at 11.) Nevertheless, the ALJ utilized VE testimony and considered Grid Rule 202.21 as a framework for his decision, and determined that Claimant was not disabled. (Id. at 12.) Accordingly, the Commissioner contends that Claimant's argument is without merit. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred at step five of the sequential analysis in relying on the testimony of the VE, whose testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). (Document No. 12 at 4-5.) First, Claimant asserts that the food counter attendant job requires reaching, which may or may not consist of overhead reaching as precluded by the ALJ's RFC, and fails to accommodate a sit/stand option as required by the ALJ's RFC. (Id. at 4.) Second, Claimant asserts that the meat processor job, though not specifically defined in the DOT, and which has the most suitable DOT occupational numbers, 525.687-022 and 529.687-130, requires heavy exertion that is inconsistent with the ALJ's RFC. (Id.) Finally, Claimant asserts that half of the inspector jobs require training in excess of Claimant's capability and that the remaining jobs require reaching, which as stated above, is inconsistent with the ALJ's RFC. (Id. at 4-5.)

In response, the Commissioner asserts that pursuant to SSR 00-4p and the unpublished decision in Fisher v. Barnhart, 181 Fed.Appx. 359, 365-66 (4th Cir. 2006), an ALJ may rely on a VE's testimony if it is based on the VE's own "experience in job placement or career counseling."

5

(Document No. 13 at 7.) The Commissioner further asserts that when the ALJ utilizes the VE's expertise regarding specific limitations about which the DOT may be silent or not comprehensive enough to list, "it does not follow that the expert's testimony is inconsistent with the DOT." (Id. at 8.) In the instant matter, the Commissioner contends that Claimant's specific quibbles, regarding reaching, exertional levels, and number of jobs at the national level, are without merit because the ALJ relied on the VE's testimony which was based on his personal knowledge and experience. (Id. at 8-9.) Regarding Claimant's reasoning ability, the Commissioner asserts that Claimant's argument should be rejected because counsel failed to question the VE about Claimant's reasoning ability or reasoning level at the hearing. (Id. at 9.)

Citing Shineski v. Sanders, 129 S.Ct. 1696, 1706 (2009), the Commissioner further asserts that Claimant's argument is harmless because if remanded, a new ALJ would propose a hypothetical to the VE with the same characteristics as Claimant and with the same RFC and the VE would find several jobs that she could perform in the national economy. (Id.) Notwithstanding this argument, the Commissioner asserts that Claimant's argument still fails because the evidence demonstrates that she could perform work with frequent reaching. (Id. at 9-10.) Thus, the Commissioner asserts that Claimant's arguments are without merit. (Id.)

Analysis.

1. Change in Age Category.

Claimant first alleges that the ALJ erred in failing to discuss her change in age category under the Regulations. (Document No. 12 at 3.) At step five of the sequential analysis, the Commissioner bears the burden of proving that the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education, work experience, skills, and physical shortcomings. 20 C.F.R. §

6

416.920(f) (2009). One way to meet this burden is through the use of the grids. The Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant v. Schweiker, 699 F.2d 189, 191-92 (4th Cir. 1983); see generally 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2009). Each grid considers the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2009). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990).

In considering the claimant's age, the Regulations establish particular age categories: (1) younger person (under age 50), (2) a person closely approaching advanced age (age 50-54), and (3) a person of advanced age (age 55 or older). 20 C.F.R. § 416.963(c)-(e) (2009). The claimant's age at the time of the ALJ's decision governs in applying the grids. See Varley v. Secretary of Health & Human Serv., 820 F.2d 777, 780 (6th Cir. 1987). At the time of the administrative hearing in the instant case (October 16, 2009), Claimant was 43 years of age. (Tr. at 15, 23, 126.) Considering that Claimant was a younger individual capable of performing a full range of light work, the ALJ applied Rule 201.21 as a framework and noted that Claimant would be found not disabled. (Tr. at 12.) Rule 201.21 states that a younger individual, with a high school education or more, capable of performing sedentary work, with skilled or semiskilled past work experience, is deemed "not disabled." 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App. 2, § 201.21 (2009). Claimant was incapable of performing a full range of light work, and therefore, the ALJ proceeded to consider the VE's testimony and the jobs to which the VE testified Claimant was capable of performing with her less

than a full range of light exertional level work. (Tr. at 16.) The ALJ issued his decision on November 2, 2009, at which time Claimant remained 43 years of age. Thus, a borderline age situation did not even exist.[1] Accordingly, the Court finds that Claimant was a "younger individual" for purposes of the Regulations at all times throughout the pendency of her claim from the filing of the application through the date of the ALJ's decision. The ALJ was not required to discuss or to consider any change in Claimant's age, and therefore, Claimant's argument is without merit.

2. VE vs. DOT.

Claimant also alleges that the VE's testimony is inconsistent with the DOT. (Document No. 12 at 4-5.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of a claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

---

[1] Generally, it appears that Claimants are in a borderline situation when they are about six months from an older age category. *Crook v. Barnhart*, 244 F.Supp.2d 1281, 1283-84 (N.D. Ala. 2003); *Pickard v. Commissioner of Soc. Sec.*, 224 F.Supp.2d 1161, 1168 (W.D. Tenn. 2002); *France v. Apfel*, 87 F.Supp.2d 484, 491-92 (D. Md. 2000)(five months borderline); *see also Daniels v. Apfel*, 154 F.3d 1129, 1133 (10th Cir. 1998)(collecting borderline age cases); Social Security Ruling ("SSR") 82-46c, 1982 WL 31427, at *6.

SSR 00-4p, which became effective December 4, 2000, and was in effect at the time of the administrative hearing in 2009, states that before an ALJ can rely on Vocational Expert testimony, he or she must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and information contained in the DOT and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p, 2000 WL 1898704 (December 4, 2000).

  A. *Reaching & Sit-Stand Option*.

Claimant asserts that the VE's testimony as to the food counter attendant and inspector jobs are inconsistent with the DOT because the DOT is silent as to the overhead reaching limitation and to the sit-stand option as stated in the ALJ's RFC. (Document No. 12 at 4-5.) As the Commissioner notes, evidence from a VE may include information not listed in the DOT, and may be available in other reliable publications, information obtained from employers, or information obtained from the VE's experience in job placement or career counseling. See SSR 00-4p. This other information generally should be consistent with the DOT. Id. "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Id. The Ruling requires the ALJ at the administrative hearing to inquire of the VE as to whether or not there is such consistency. Id.

In this case, the ALJ failed to inquire of the VE as to whether or not his testimony was consistent with the DOT. The Court finds however, that the ALJ's failure was harmless because the information provided by the VE did not contradict the DOT. Neither the overhead reaching limitation, nor the sit-stand option were addressed in the DOT. Consequently, the VE's testimony did not conflict with the DOT. Rather, regarding the sit-stand option, the VE supplemented what was

9

stated in the DOT based on his experience. See e.g., Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007)(holding that no conflict appeared to exist and therefore, the ALJ's failure to ask the VE about the possible conflicts was harmless); Massachi v. Astrue, 486 F.3d 1149, 1154, n 19 (9th Cir. 2007)(finding that the ALJ's failure to follow SSR 00-4 would have been harmless if there had been no conflict between the VE's testimony and the DOT); Wellington v. Astrue, 2013 WL 1944472, *4 (S.D. N.Y. May 9, 2013)(finding harmless any violation of SSR 00-4p as there was no actual conflict between the VE and the DOT regarding the sit-stand option); Thompson v. Astrue, 2010 WL 3878729, *5 (D. S.C. June 16, 2010)(finding no conflict when the DOT did not address the sit-stand option, hence no duty of explanation arose, and the ALJ's failure to inquire was harmless error); Corbett v. Astrue, 2006 WL 5527015, *62 (N.D. W.Va. Mar. 24, 2006)(finding that "the lack of a sit-stand option in the DOT does not conflict with the VE's testimony that certain jobs would be available with a sit-stand option in the national economy.").

The DOT did not address the sit-stand option, but the VE identified jobs based on his personal experience, that allowed such an accommodation. The VE's testimony did not conflict with the DOT. Rather, it supplemented the DOT, and therefore, the Court finds that the ALJ's failure to inquire of the VE as to the consistency of his testimony with the DOT is harmless.

Regarding the overhead reaching limitation, the ALJ precluded Claimant from performing such activity in his RFC assessment. (Tr. at 13.) The VE identified the food counter attendant and inspector jobs, which according to the DOT, require frequent lifting. The DOT remains silent as to overhead reaching. In determining that Claimant could perform these two jobs, the ALJ asked the VE at the administrative hearing whether someone of Claimant's age, education, and work experience, who was limited to light exertional level work, who could perform no overhead lifting, had an option to sit-stand, who could perform postural activities occasionally and should avoid

concentrated exposure to cold, heat, vibration, or hazards, could perform work in the national economy. (Tr. at 57.) The VE responded that such a person could work as a food counter attendant, meat processor, and an inspector.[2] (Tr. at 57-58.) In a further hypothetical question, the ALJ asked the VE to leave all criteria the same, except that the individual be limited to sedentary work instead of light work. (Tr. at 59.) The VE responded that such a person could work in the national economy as a simple inspector. (Id.) The VE's concern with the sedentary simple inspector position however, was that it had "a pretty consistent reaching quality to it, including overhead." (Tr. at 60.) It is clear that the VE was concerned with a person such as Claimant performing the job of an inspector at the sedentary level because it required a great deal of overhead reaching, contrary to the ALJ's limitation. The VE however, was not concerned with such a limitation at the light level of exertion. It can be inferred that based on the VE's experience, overhead reaching was an issue at the sedentary level but not at the light level. Accordingly, the Court finds that the VE's testimony did not conflict with the DOT. Rather, the VE's testimony supplemented the DOT where it remained silent as to the overhead reaching requirement.

Based on the foregoing, the Court finds that the VE's testimony was consistent with the DOT regarding the reaching requirements for the food counter attendant and inspector jobs and that Claimant's argument is without merit.

---

[2] The Court notes that the transcript of the administrative hearing contains sever inaudible references regarding the VE's response to the ALJ's hypothetical for light work. (Tr. at 58.) The ALJ's decision indicates that all three jobs, the food counter attendant, meat processor, and inspector, were identified by the VE in response to this hypothetical and neither party seems to contradict this finding. For purposes of this decision, the Court therefore proceeds with the understanding that all three jobs were identified in response to the hypothetical with the light exertional level.

11

### B. *Inspector Job*.

Claimant also alleges that the VE is inconsistent with the DOT because half of the inspector jobs require training in excess of her capability. (Document No. 12 at 4-5.) Contrary to the Commissioner's response, Claimant's counsel raised in part, this issue at the administrative hearing. At the hearing, counsel asked the VE whether Claimant's limited, or eleventh grade education, would change the three jobs he identified. (Tr. at 64.) The VE responded that it would not and that she could work any of the three identified jobs with an eleventh grade education, or in the absence of a high school diploma. (Id.) Thus, the issue partially was raised at the administrative hearing. Claimant alleges that of the 700 inspector jobs identified by the DOT, only 40 jobs satisfy the ALJ's RFC, and only half of those jobs meet her aptitude and ability. (Document No. 12 at 4-5.) She asserts that the inspector position requires "supervisory or additional educational requirements such as a[n] engineering degree and so forth." She further asserts that the inspector position, DOT occupational number 321.137-014, is most representative of those jobs. This particular job however, has a SVP of 3, which is semi-skilled, and requires a general learning ability in the middle one third of the population. The Court notes that the pencil inspector position, DOT occupational number 733.687-062, has a SVP of 2, which is unskilled, and requires a general learning ability in the lowest one third of the population. There are inspector positions within the DOT that are consistent with the VE's testimony and the ALJ's RFC.

The Court therefore finds that the VE's testimony is consistent with the DOT and that Claimant's argument is without merit regarding the inspector position.

### C. *Meat Processor Job*.

Finally, Claimant alleges that contrary to the VE's testimony, the DOT requires that the meat processor job be performed at the heavy exertional level, which is inconsistent with the ALJ's

12

assessed RFC of light exertional level work. (Document No. 12 at 4.) Claimant cites DOT occupational numbers 525.687-022 and 529.687-130 in support of his argument. (Id.) The undersigned went through some of the DOT occupational numbers for the Meat Products Industry and discovered that it appears that the majority of the jobs are performed at the medium and heavy exertional levels. Nevertheless, there were some light exertional jobs, which satisfied the ALJ's RFC in this particular case. Those occupational numbers include: 525.684-038 (offal separator), 529.687-034 (casing tier), 529.687-030 (casing sewer), 525.686-010 (casing cleaner), 525.687-014 (casing splitter), and 525.687-126 (crab meat processor). The VE's testimony therefore, was not inconsistent with the DOT as they both identified light exertional jobs that otherwise met the ALJ's assessed RFC. Thus, although the majority of the jobs are performed at exertional levels which exceed Claimant's capabilities, the VE and the ALJ identified jobs at sufficient numbers which meet Claimant's capabilities. However, to the extent that the ALJ may have committed any error in identifying jobs of this category, the Court finds that the ALJ sufficiently identified the food counter attendant and inspector jobs, which Claimant is capable of performing. Accordingly, any error, the ALJ may have committed is harmless.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

. The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: August 8, 2013.

R. Clarke VanDervort
United States Magistrate Judge

13